IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBIN L. GOLDSMITH,

    Plaintiff,

v.                                Civil Action No. 5:08cv171
                                  (Judge Stamp)

FRED QUEEN,
D.O. DAVID PROCTOR,

    Defendants.

## REPORT AND RECOMMENDATION

### I. Procedural History

On November 20, 2008, the plaintiff initiated this case by filing a civil rights complaint under 42 U.S.C. § 1983. On December 6, 2008, the plaintiff was granted leave to proceed *in forma pauperis*. On May 15, 2008, the undersigned conducted a preliminary review of the file and issued a Report and Recommendation that the plaintiff's claims against: (1) Jim Ilepai, the warden at the Pruntytown Correctional Center, (2) Wexword Health Sources, (3) Teresa Waid, the warden at the Huttonsville Correctional Center, (4) Jim Rubenstein, the Commissioner of the West Virginia Division of Corrections, and (5) Ronald Morino be dismissed with prejudice and that those individuals and/or organizations be dismissed as defendants in this action. No objections were filed, and on June 30, 2009, the court entered an order adopting the Report and Recommendation and directed that the remaining defendants, Fred Queen and Dr. Proctor be made to answer the complaint.

On July 17, 2009, Dr. Proctor filed a Motion to Dismiss with supporting memorandum. On

1

August 13, 2009, Fred Queen filed a Motion to Dismiss with supporting memorandum and affidavit. On August 14, 2009, a Roseboro Notice was issued. As of the date of this Report and Recommendation, the plaintiff has made no response.

## II. The Pleadings

### A. The Complaint

In the complaint the plaintiff asserts that on April 22, 2008, he was given an educational assignment at Prunytown Correctional Center in facilities maintenance. The plaintiff also asserts that although he was not given safety training and instruction on the proper use of a jackhammer, he was placed in operation of this piece of heavy equipment to complete work on a sidewalk. The plaintiff alleges that on May 13, 2008, while using the jackhammer, he severed approximately one quarter of a finger on his left hand. The plaintiff alleges that this injury was caused by the defendants' failure to properly train him with respect to using a jackhammer. The plaintiff further alleges that it was four hours after the injury before he was transported to Ruby Memorial Hospital. The plaintiff states that although some treatment was given at the hospital, he continues to suffer constant pain as a result of the injury. The plaintiff also alleges that he remained deprived of adequate medical care at both the Prunytown Correctional Center, and later, Huttonsville Correctional Center. For relief, the plaintiff seeks a declaratory judgment that the defendants violated his constitutional rights, an order directing the WVDOC to properly repair his injury, and compensatory damages to be determined by a jury.

### B. Defendant Proctor's Motion to Dismiss

In his answer to the complaint, defendant Proctor asserts that the plaintiff's complaint should be dismissed against him because it fails to state specific allegations against him. More specifically, defendant Proctor asserts that while the plaintiff makes a conclusory statement that he was deprived of adequate medical care at PruntytownPronation and at Huttonsville, the only specific allegation made

is the approximately four (4) hour delay in medical treatment following the accident. Because defendant Proctor is the doctor responsible for medical care at the Huttonsville Correctional Center, he argues that he could not be responsible for any alleged mistreatment which occurred at PruntytownPronation and which resulted in the partial amputation of a finger on the plaintiff's left hand. Finally, defendant Proctor contends that the plaintiff sets forth no claims which could establish that he acted with deliberate indifference to any serious medical condition of the plaintiff.

**C. Fred Queen's Motion to Dismiss**

In answer to the complaint, defendant Queen acknowledges that as part of the rehabilitation process, the plaintiff was admitted to a facilities maintenance program. On or about May 13, 2008, as part of the program, the plaintiff was assigned to a crew to repair the front steps of the administration building. Without being assigned to use the jackhammer, the plaintiff did use the jackhammer to break up the stairs, and in the process, injured his finger between the jackhammer and the wall. However, defendant Queen asserts that the plaintiff's complaint should be dismissed due to failure to exhaust administrative remedies. In addition, defendant Queen asserts that he did not violate the plaintiff's constitutional rights. Finally, defendant Queen asserts that he is entitled to qualified immunity.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d

1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with

---

[1] Porter v. Nussle, 534 U.S. 516, 524 (2002).

the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

Although the plaintiff acknowledges that there is a grievance procedure at the PruntytownPronation Correctional Center, and asserts that he presented the facts related to his complaint in the grievance procedure, he has not attached any copies of his grievances, nor supplied any other proof that he, in fact, exhausted his administrative procedures. However, Jim Ielapi, the warden at the Prunytown Correctional Center has supplied an affidavit, dated December 5, 2008, in which he affirmatively states that he never received a grievance from the plaintiff related to any complaints of lack of training or supervision related to the incident of May 13, 2008, which is the subject of the plaintiff's complaint. Inasmuch as the plaintiff has failed to file a response to the Roseboro Notice, he has presented no evidence to contradict the affidavit in support of defendant Queen's Motion to Dismiss. Accordingly, the plaintiff's bald assertion that he exhausted administrative remedies cannot survive the Motion to Dismiss, and the complaint as it relates to defendant Queen should be dismissed without prejudice.

## B. **Deliberate Indifference**

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain' or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted). These principles apply to the conditions of a prisoner's confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining

6

that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment). Therefore, while "'the Constitution does not mandate comfortable prisons,'" it also "does not permit [an] inhumane one." Id. (quoting Rhodes, 452 U.S. at 349).

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that, objectively, the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[2]

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F.

7

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

In the instant case, it is doubtful that the plaintiff's injury, the loss of approximately one quarter of a finger on his left hand amounts to a serious medical condition that satisfies the objective component of an 8th Amendment claim. However, even if the plaintiff suffered a serious medical

---

Supp. 642 (N.D. W.Va. 1997).

condition, the plaintiff has not met his burden of alleging facts sufficient to show that defendant Proctor was deliberately indifferent to his injury.

Rule 8(a) of the Federal Rules of Civil Procedure provides that a Complaint shall contain ..."a short and plain statement of the claim showing that the pleader is entitled to relief...".  Although this pleading requirement is liberal, "more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against the defendant."  Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321321, 326 (4th Cir. 2001.).

In reviewing the plaintiff's complaint, the undersigned finds that the only specific allegation made regarding the plaintiff's medical care was a four (4) hour delay between the time he severed a portion of his finger at Pruntytown and his transport to Ruby Memorial Hospital for treatment.  Because defendant Proctor is the physician at the Huttonsville Correctional Center, he could not have been responsible for any delay that occurred at Pruntytown.  Moreover, although the plaintiff makes a general allegation of inadequate care at both Huttonsville and Pruntytown, aside from naming Dr. Proctor, he makes no specific allegation regarding any failure on the part of said defendant that supports even a minimal showing of deliberate indifference on the part of defendant Proctor.  Accordingly, he should be dismissed as a defendant.

## V.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that defendant Proctor's Motion to Dismiss (Doc. 26) be **GRANTED**, and the plaintiff's complaint as it relates to Dr. Proctor be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted, and defendant Queen's Motion to Dismiss (Doc. 29) be **GRANTED**, and the plaintiff's complaint as it relates to Fred Queen be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust

9

administrative remedies.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk is directed to send a copy to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: October 26, 2009

      /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE